

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MARTIN BENZ GARCIA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:06-CV-0124 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner MARTIN BENZ GARCIA has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 222nd Judicial District Court of Deaf Smith County, Texas, for the felony offense of capital murder. For the reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
PROCEDURAL HISTORY

On April 19, 2001, in the 222nd Judicial District Court of Deaf Smith County, Texas, petitioner was indicted with a co-defendant, Brian Parrack, for the offense of capital murder, alleged to have occurred on February 25, 2001. *State v. Garcia*, Cause No. CR-01D-058. Petitioner pled not guilty to the charges. On May 24, 2002, a jury found both petitioner and the co-

defendant guilty of capital murder. The State did not seek the death penalty and, based upon the guilty verdict, the petitioner received a sentence of life imprisonment in the Texas Department of Criminal Justice, Correctional Institutions Division.

Petitioner appealed his conviction and sentence to the Seventh Court of Appeals, which affirmed the conviction on November 12, 2004.[1] *Garcia v. State*, No. 07-02-0358-CR (Tex. App.–Amarillo 2004).[2] Although petitioner filed an extension of time to file a petition for discretionary review, no petition was ever filed.

On February 14, 2005, petitioner filed an application for state habeas corpus, alleging the same grounds he presents in the instant federal petition. On June 15, 2005, the Court of Criminal Appeals denied relief without written order on the findings of the trial court without a hearing. *Ex parte Garcia*, App. No. WR-61,793-01. On April 6, 2006, petitioner, represented by counsel, filed this federal petition for habeas relief. On December 13, 2006, the State filed its answer.

## II.
## FACTUAL HISTORY

The factual history of this case was set out in the state court of appeals opinion:

On February 25, 2001, at approximately 10:20 p.m., Tony Garcia, assistant manager of the Thriftway East grocery store in Hereford, Texas, was shot and killed as he left the store after closing with the day's cash deposits. When officers arrived at the scene, they found Tony Garcia slumped over in the driver's seat of his vehicle, which was sitting in the parking lot with its engine running. He had been shot three times, once in the chest, once in his right side, and once in his legs, where a bullet entered and exited his right leg, lodging in his left leg. He also had another wound to the

---

[1] In his direct appeal, petitioner raised seven issues: (1) denial of right to counsel during the search of the vehicle and the show-up; (2) ineffective assistance of counsel; (3) denial of change of counsel; (4) forced choice between proceeding *pro se* or keeping trial counsel for punishment phase of trial; (5) denial of jury for punishment phase of trial; (6) sufficiency of the evidence; and (7) insufficient time between indictment and arraignment.

[2] Co-defendant Parrack also filed an appeal of his conviction, however, said appeal was dismissed October 15, 2004 after notice of Parrack's August 25, 2004 death.

chest caused when the jacketing of the bullet that entered his chest separated from the bullet and entered separately. Autopsy results indicated that one of the wounds in his chest was the probable cause of death. The bullets recovered from wounds in his chest and side were of .38 caliber class, while his leg wounds were caused by a single .22 caliber bullet. The store's money bag was with him.

. . . .

The State presented the testimony of appellant's brother Jose Garcia. He testified that appellant, prior to the day of the shooting, told him appellant and Parrack were planning to rob the Thriftway East grocery store.[3] Jose further testified that the day of the shooting appellant described how he and Parrack planned to carry out the robbery. Jose stated, "He told me Parrack was going to be across the street on the building and he was going to shoot the manager in the legs and Martin was going to come from across the street and get the money." He testified appellant left their home with Parrack. Later that night Jose was awakened by appellant. Jose testified, "I woke up, I don't know what time it was, my brother came into the room, he told me that he shot Tony and I asked him if he had killed him and he said I don't know, but he had seen Tony slump over the steering wheel and the car took off in reverse and that he ran up to the car and tried opening the door but it wouldn't open so he took off."

Jose also testified that a few days after the shooting appellant had a black handgun, and it was the gun with which he had shot the victim. Appellant asked Jose what he should do with the gun. Jose advised him to get rid of it.

The night of the shooting, individuals near the scene of the crime heard gunshots. A hole in the windshield of the victim's vehicle, a shattered driver's-side window and glass in the interior of the vehicle indicated shots had been fired into the vehicle. Rodney Tucay, M.D., who performed an autopsy on the victim, testified that the victim had one wound in his left lateral chest, two wounds in his right upper chest, caused when a bullet and its copper jacket separated after being fired from a gun, and wounds in both legs caused by a single .22 caliber bullet. Dr. Tucay testified that the wound in the right upper chest, caused by the bullet, was the likely cause of death. He opined that the leg wounds would not have been life-threatening.

Investigators found two spent .357 Sig cartridge casings and two live .357 Sig cartridges in the Thriftway parking lot. A police search of the barn located behind the residence occupied by appellant and Jose produced a black Glock model 31 handgun (admitted as State's exhibit 16) wrapped in plastic on the barn's rafters. A live .357 Sig cartridge was found on the barn floor. Aaron Fullerton, a firearms examiner with the Texas Department of Public Safety crime laboratory, testified that

---

[3]Parrack was a former Thriftway employee.

the two spent .357 Sig cartridge casings found at the scene of the shooting were fired from the gun found in the barn. Fullerton identified the bullets removed from the chest of the victim as .38 caliber-class bullets, but could not say whether or not they were fired from that particular gun.[4]

Justin Tarr, a former co-worker of Parrack's testified that, within weeks before the shooting, Parrack showed him a .357 Sig Glock handgun he owned. Tarr identified State's exhibit 16 as being like the gun Parrack showed him. A magazine fitting a Glock model 31 was found in Parrack's pickup truck during a police search a few days following the shooting. It contained ten live cartridges.

Charles Peters, a forensic scientist for the FBI, testified that an analysis of the content of one of the lead bullets removed from the victim revealed that it was "analytically indistinguishable" from the two live .357 Sig cartridges found at the scene and the live cartridge found in the barn behind appellant's residence, indicating that all those bullets were manufactured from the same molten pot of lead. The lead content of the other bullet taken from the victim's chest was different. Peters testified, though, that it is not uncommon for bullets originating with different pours of lead to end up in the same box of shells.

Police also found three spent .22 shell casings on the roof of a building across the street from the Thriftway and a rope hanging toward the ground from an exhaust pipe on the roof of that building. The rope had cut through the tin at the edge of the building's roof. Parrack's former girlfriend testified she was with him on the afternoon of the shooting, and as they drove near the Thriftway he said, "I'm going to 'hit' (or 'get') that mother f'er tonight," indicating he would be across the street from the Thriftway. Peters testified that the lead content of the .22 bullet found in the victim's leg was indistinguishable from that of .22 cartridges found in Parrack's pickup truck and in the residence appellant and his brother Jose shared.

*Garcia v. State*, Slip Op. at 2, 5-8.

### III.
### PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United

---

[4] He testified they "might or might not" have been fired from the weapon admitted as State's exhibit 16. Fullerton's written report, also admitted into evidence, states: "The copper-jacket and copper-jacketed bullet [removed from the victim's body] are .38 caliber and were fired from a barrel having polygonal rifling with six lands and grooves with a clockwise rotation, which are the same class characteristics as the submitted .357 Sig caliber pistol; however, the copper-jacket and copper-jacketed bullet could not be identified or eliminated as having been fired from the submitted .357 Sig caliber pistol." Testimony also established that .357 caliber cartridges are included within the .38 caliber class.

States for the following reasons:

    1.    Petitioner was denied effective assistance of counsel because trial counsel failed to:

        a.    object each time co-defendant's counsel implicated petitioner during the guilt-innocence phase of the trial; and

        b.    renew his motion to sever his case from his co-defendant's case or move for mistrial each time co-defendant's counsel implicated petitioner.

## IV.
## EXHAUSTION OF STATE COURT REMEDIES

In his answer to this petition, respondent concedes petitioner sufficiently exhausted his available state court remedies as required by 28 U.S.C. § 2254(b), (c). The undersigned Magistrate Judge has reviewed petitioner's state court records and it appears petitioner has presented, to the highest court of the State of Texas, the substance of the claims he now presents to this federal court. Therefore, it is the opinion of the Magistrate Judge that petitioner has exhausted his available state court remedies, and that this cause not be dismissed for any failure to exhaust, but instead, be decided on the merits.

## V.
## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:

    1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

      2.       resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

      Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997).

      Petitioner filed a state habeas application challenging the constitutionality of his conviction and sentence alleging the same grounds of ineffective assistance of counsel alleged in this petition. The Court of Criminal Appeals denied petitioner's state habeas application on June 15, 2005 without written order on the findings of the trial court without a hearing. *Ex parte Garcia*, App. No. WR-61,793-01. The ruling of the Texas Court of Criminal Appeals constitutes an adjudication of petitioner's claim on the merits. *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).

Consequently, this Court's review is limited to a determination of whether petitioner has shown the state court's decision that petitioner was not denied his constitutional right to effective assistance of counsel at trial was based on an unreasonable determination of the facts in light of the evidence before the state court.[5]

## VI.
## MERITS

In order to obtain habeas corpus relief on the ground of ineffective assistance of counsel, a petitioner must demonstrate not only that his counsel's performance was deficient, but also that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness." *Id.* at 668, 104 S.Ct. at 2064. However, a strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066). To demonstrate prejudice, a petitioner must show that a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Id.* at 697, 104 S.Ct. at 2069.

Petitioner filed a pretrial motion for severance arguing, "A joint trial will be prejudicial to the defendant in that the State will present evidence admissible only against co-defendant that will

---

[5] No allegation has been made that the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Therefore, this Court's review is limited to a factual analysis of the state courts' adjudications.

confuse the jury and make it impossible to render a fair and impartial verdict. Also, the joint trial is prejudicial to the defendant due to the adverse position of the joint defendants forcing defendant to defend himself against both the State and the co-defendant." Petitioner sought severance under Texas Code of Criminal Procedure article 36.09 which mandated severance if evidence introduced in support of the motion showed a joint trial would be prejudicial to any defendant or if there was a previous admissible conviction against one defendant. During a pretrial hearing, both petitioner's counsel and co-defendant's counsel argued for severance based upon antagonistic defenses. 3 SF 89-108. Neither counsel, however, produced any evidence as to their individual defense. Consequently, the state trial court found there were no facts justifying a severance and denied the motion.

At trial, neither defendant testified nor did petitioner present testimony or other evidence on his own behalf. Co-defendant Parrack asserted an alibi defense through his father who testified Parrack was at home at the time the shooting occurred. Parrack's father did not implicate petitioner. Petitioner's defense challenged, through cross-examination, the State's evidence that he was involved in the shooting. Both co-defendant Parrack and petitioner attempted to attack the credibility, alibi and character of the State's primary witness, Jose Garcia, petitioner's brother.

Throughout the trial, defense counsel (as well as co-defendant's counsel) re-urged their requests for severance on the bases of antagonistic defenses, the defensive theory that co-defendant Parrack was implicating petitioner's guilt and such prejudiced petitioner by requiring him to defend against such implications, as well as the possibility of the introduction of prior offenses admissible against one defendant but not the other. 5 SF 29, 48-52, 199, 201, 301-03, 524-25, and 746-47. The trial court denied each request by both counsel to sever and, with its final denial, stated, "You

guys have done as good a record job as anybody I have ever saw [sic] for protecting that issue, you-all have protected that issue." 5 SF 747.

On direct appeal, petitioner argued the trial court abused its discretion in failing to grant his motion for severance. The state appellate court fully considered petitioner's claim under an abuse of discretion standard of review, and rejected the claim on the basis petitioner could not show he was clearly prejudiced by the trial court's failure to grant a severance. *Garcia v. State*, Slip Op. at 14-17. The court noted Texas case law allows the severance of cases "on the basis of conflicting defenses, if the co-defendant's positions are mutually exclusive in the sense that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *Id.* at 14. The appellate court found, however, that although statements and cross-examination by co-defendant's counsel were designed to implicate petitioner's brother as the second participant in the armed robbery, the evidence presented did not require that the jury, in order to believe the core of one defense, had to disbelieve the core of the other. The court found petitioner was not prejudiced by the failure to sever.

In his state habeas application, petitioner alleged he was denied effective assistance of trial counsel due to eight (8) instances when "trial counsel did not object but allowed the co-defendant's attorney to take a position adverse to my innocence, comparable to a prosecutor, and to attack my presumption of innocence on the instant offense throughout trial due to his confusion on the law." The state habeas court, presided over by the same trial judge that heard petitioner's trial, ordered petitioner's trial counsel to submit an affidavit responding to designated "controverted, previously unresolved facts material to the legality of [petitioner's] confinement." The state habeas court then

made findings of fact and conclusions of law which included, in part, the following:

1. "[Petitioner] received effective assistance of counsel."

2. "[Defense counsel] exercised reasonable trial strategy in deciding when to or not to urge trial objections."

3. "[Petitioner] has failed to show that the Court would have committed error in overruling the objections [petitioner] alleges should have been lodged by trial counsel;" and

4. "[Petitioner] has failed to prove that but for counsel's alleged deficient performance the result of the trial would have been different."

The Court of Criminal Appeals denied petitioner's state habeas application on June 15, 2005 without written order on the findings of the trial court without a hearing. *Ex parte Garcia*, App. No. WR-61,793-01.

In this federal habeas application, petitioner again argues he was constitutionally denied effective assistance of counsel on the eight (8) specific occasions during trial when counsel failed to object to implications made by co-defendant's counsel that petitioner was responsible for the crime. Specifically, petitioner contends co-defendant's counsel accused petitioner in open court of the joint charges and his defense counsel did not assert an objection.[6] Petitioner contends no reasonable counsel would let his client be openly accused by co-defendant's counsel multiple times during trial. Petitioner argues the fundamental fairness of petitioner's trial was undermined when he had to not only defend against the prosecution's case, but also against his co-defendant, whose counsel used the defense of petitioner's guilt in his own case as well.[7] Petitioner concludes he was

---

[6] Petitioner identifies perceived or direct implications made by co-defendant's counsel during examination of police officers (3 instances), the forensic examiner, and petitioner's brother (2 instances), and in the actions of co-counsel in producing the photo of petitioner's home where the weapons and ammunition were found, and in co-counsel's closing statement.

[7] Petitioner contends his counsel allowed him to effectively be the target of the prosecution's case as well as the co-defendant's case.

prejudiced by this deficient representation in that but for both the prosecution and co-defendant pointing the finger at petitioner throughout the entire trial, the result of the proceeding would have been different.

Similarly, and in what is basically the same contention, petitioner asserts trial counsel was deficient for failing to renew his motion to sever or to move for a mistrial, on these same eight (8) occasions.  Petitioner contends he was forced to prove his case while defending himself against both the prosecution and his co-defendant who attempted throughout the trial to shift the blame for the crime to petitioner, and that counsel's failure to renew his motion to sever allowed petitioner to become the scapegoat.  Petitioner contends that had counsel renewed his motion to sever these additional times, the trial court would have been obligated to grant such motion because co-defendant's theory of the offense was diametrically opposed to that of petitioner, and the required severance would have likely changed the outcome of petitioner's trial.

The state appellate court determined petitioner was not entitled to a severance and that the trial court did not abuse its discretion in denying petitioner's repeated motions for severance.  The state habeas court, based on the findings of the state trial judge that heard petitioner's trial, determined petitioner was not denied his constitutional right to effective assistance of counsel as a result of counsel's failure to assert additional objections to the joint trial or further renew his motion to sever at the times identified by petitioner.

These state court findings are entitled to a presumption of correctness and petitioner has failed to show the specific state court finding that trial counsel was not deficient was unreasonable. Trial counsel urged the issue of severance repeatedly throughout the trial, choosing the valid strategy of making his objections and renewing his motion to sever outside the presence of the jury

so as not to draw further attention to any implication of petitioner's guilt. At each of the eight (8) instances identified by petitioner when counsel did not again object to co-defendant's questioning or renew his request for severance, counsel had already moved for severance on the basis of adverse defenses and did again shortly thereafter. Petitioner's argument essentially boils down to whether trial counsel objected or reurged his motion to sever on enough occasions. Each state court that has been presented with this issue has entered a ruling on the merits finding either that severance was not warranted or that counsel was not deficient. Each state court has considered the merits of the issue instead of finding waiver. Petitioner has not met his burden of showing these findings to be unreasonable, and his petition is subject to denial on that basis.

Nor has petitioner shown the state court's finding that he was not prejudiced by counsel's actions was unreasonable. Petitioner cannot show that even if his counsel had objected at the additional points identified, that the trial court would have then severed the cases or that the result of the trial would have been different. In fact, the trial court's comment that counsel had well preserved the issue after his denial of counsel's last request to sever indicated the trial court's opinion that counsel had sufficiently urged the issue and was not, in fact, lax in making a repeated argument for severance, but that the trial court was not going to grant severance despite the efforts of counsel. This Court cannot find the state court findings that co-defendant's defense was not antagonistic to petitioner's defense, that severance was not required, and that the trial court did not abuse its discretion in denying severance, were unreasonable.[8]

The Court agrees with the state appellate court's determination that the statements and

---

[8] Of the eight (8) occasions cited by petitioner, out of approximately eight-hundred pages of testimony, it appears counsel for co-defendant Parrack was attempting to shift blame for the crime to petitioner's brother rather than to petitioner himself – a tactic even employed by petitioner himself. In those instances, co-defendant did not directly argue petitioner's guilt. Moreover, neither defendant testified and gave testimony requiring the jury to disbelieve one defendant in order to believe the other.

cross-examination by co-defendant's counsel were designed to and did implicate petitioner's brother as the second participant in the robbery and murder. Those statements and questions did not directly implicate petitioner, and the fact that petitioner's brother was implicated does not in and of itself warrant habeas relief for petitioner, nor did such warrant a severance at the trial court level. Indeed, many of the questions petitioner describes as improperly implicating him, merely covered evidence that had already been introduced by the state, *e.g.*, the search warrant at the home of petitioner and his brother where a weapon and ammunition were recovered.

In addition, the trial evidence against petitioner was substantial to the extent that petitioner cannot show he was prejudiced by any of the comments or questions identified. The evidence at trial established that petitioner told his brother, Jose, prior to the murder of his plan to rob the Thriftway store and told him how the robbery was going to occur. Petitioner then admitted to his brother, after the robbery, to shooting the victim. A few days later, petitioner told his brother, Jose, that he had a weapon that had been used. This testimony by petitioner's brother, of petitioner's admissions, both prior to and after the robbery, that he planned to commit the robbery and, in fact, did commit the robbery, together with the forensic evidence introduced at trial clearly established petitioner's guilt.

The undersigned finds petitioner has not made a showing that these state court findings are based on an unreasonable determination of the facts.

Although petitioner has presented his claims in terms of ineffective assistance of counsel, petitioner also appears to be arguing he was denied a fair trial because of the state trial court's failure to sever his case from that of his co-defendant. To the extent, if any, petitioner is arguing he was denied a fair trial by being jointly tried with his co-defendant, petitioner's argument is without

merit. Under federal law, the decision of whether to grant a motion for severance rests within the sound discretion of the trial court and is required only in cases of compelling prejudice.[9] *United States v. McIntosh*, 655 F.2d 80, 84 (5th Cir. 1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1450, 71 L.Ed.2d 662 (1982). A trial court's refusal to grant a severance will be reversed only where the trial court has abused its discretion. *Alvarez v. Wainwright*, 607 F.2d 683, 685 (5th Cir. 1979); *see United States v. Berkowitz*, 662 F.2d 1127, 1132 (5th Cir. 1981). To justify relief under 28 U.S.C. § 2254, petitioner must show the state trial court's refusal to sever rendered petitioner's state trial fundamentally unfair and violative of due process. *Demps v. Wainwright*, 666 F.2d 224, 227 (5th Cir.), *cert. denied*, 459 U.S. 844, 103 S.Ct. 98, 74 L.Ed.2d 89 (1982). For this Court to find petitioner's trial was fundamentally unfair because it jointly tried petitioner with a co-defendant, petitioner must, at a minimum, demonstrate prejudice sufficient to warrant relief under Rule 14 of the Federal Rules of Criminal Procedure[10] or its state counterpart. *Alvarez*, 607 F.2d at 685.

The Texas counterpart to Rule 14 is article 36.09 of the Texas Code of Criminal Procedure which provides:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a

---

[9] Habeas corpus petitions from state prisoners claiming a right to severance are treated the same as federal convictions involving the same severance issues. *Breeland v. Blackburn*, 786 F.2d 1239, 1241 (5th Cir. 1986). This is so because neither federal nor state courts may engage in improper and prejudicial joinder. *Id.*

[10] Rule 14 provides, in pertinent part:

If it appears that a defendant . . . is prejudiced by a joinder . . . of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

> previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

Unlike Federal Rule 14, the Texas statute has a mandatory aspect. That is, if evidence is introduced, together with a timely motion to sever, demonstrating a joint trial is prejudicial to a defendant, the court <u>shall</u> order a severance as to that defendant. Neither petitioner or his co-defendant, however, at the time their motions to sever were filed and heard, were willing to put on evidence demonstrating how their defenses would be antagonistic or how either would be prejudiced by a joint trial. This failure justified the state trial court's initial denial of severance. Moreover, based on the evidence presented in this case, petitioner has not shown each subsequent request for severance was supported by a showing that petitioner was being prejudiced by the continuation of the joint trial. Petitioner did not show there to be any evidence or testimony elicited against or by the co-defendant which would not have been elicited in a separate trial against petitioner alone, nor has he demonstrated what evidence was admitted which could have been excluded in a separate trial. Petitioner did not demonstrate to the state trial court inconsistent defenses, varying degrees of guilt, or adverse positions during the trial with each renewal of his motion to sever. The state trial court was justified in denying each request for severance, and would have been justified in denying additional requests at the times or on the instances identified by petitioner.

Petitioner has not now demonstrated he was denied a fair trial by being jointly tried with his co-defendant or what other procedural advantage could have been gained by a separate trial. Petitioner has not shown the joint trial compromised a specific trial right, or prevented the jury from making a reliable judgment about guilt or innocence. Nor has petitioner shown he was prejudiced

by the joint trial, e.g., by demonstrating evidence admitted only as to co-defendant Parrack and inadmissible against petitioner if tried alone, was erroneously considered by the jury against petitioner; or that co-defendant Parrack had a markedly higher degree of culpability than petitioner; or that essential exculpatory evidence that would have been available to petitioner if tried alone was unavailable in his joint trial with Parrack. *Cf. Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993).

     Neither petitioner or his co-defendant testified at trial. Petitioner's defense at trial was that he was not involved in the shooting, presented through cross-examination of the State's witnesses and summation. Petitioner did not present testimony or other evidence on his own behalf. In summation, petitioner argued the gun, although found at his residence, was hidden in an area accessible to the public and could have been put in its hiding place by anyone. Petitioner noted the .22 caliber bullets were found in the possession of his brother, Jose Garcia, who happened to give the only testimony implicating petitioner in this case, and who stood to receive ten years probation for an aggravated robbery offense in exchange for his testimony. Co-defendant Parrack asserted an alibi defense through the testimony of his father, who testified his son was at home at the time of the shooting. Parrack's father did not implicate petitioner. Petitioner did not attack co-defendant Parrack's alibi and has not shown that a joint trial prevented him from doing so, nor has he asserted how he would have attacked the alibi defense in separate trials. While Parrack's counsel's statements and cross-examinations did attempt to deflect blame from Parrack and directly implicated petitioner's brother as a participant in the shooting, Parrack did not directly argue petitioner was responsible for the crime. Moreover, petitioner also attempted to attack the credibility, alibi and character of his brother during the trial. Based on the state of the record, this

Court cannot find petitioner's trial was fundamentally unfair because it jointly tried petitioner with his co-defendant.

Petitioner's grounds are without merit and should be DENIED.

## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for Writ of Habeas Corpus by a Person in State Custody filed by petitioner MARTIN BENZ GARCIA be DENIED.

## VIII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 7th day of August 2009.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of

Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).